In the Matter of THOMAS S. KING, Police Justice of Buffalo.

*Supreme Court, Fifth Department, General Term, June, 1889.*

1. *Police justice. Jurisdiction.*—The power of the mayor of Buffalo to remove a police justice for misconduct does not deprive the supreme court of like jurisdiction.

2. *Same. Charge. Specification.*—In proceedings for the removal of a police justice, a specification cannot extend over a period of time which the charge itself does not cover; and conduct prior to the time specified in the charges cannot be made the subject-matter of removal thereunder.

3. *Same.*—It is not sufficient cause for his removal that, from passion and prejudice, he adjourned a bastardy case for some time and kept the defendant in jail in the meantime, where no objection was made to the adjournment and extenuating circumstances appear.

4. *Same.*—Nor is the malicious utterance of slanderous language from the bench regarding the mayor, and the county judge, a sufficient cause of removal; nor the suspension of sentence on a prisoner convicted of assault and battery.

5. *Same.*—Objection to the appointment of policemen for his court and to their attendance does not constitute serious misconduct.

6. *Same.*—Nor does his statement in a return to an appellate court, that the attorney taking the appeal was a "penitentiary outcast and legal pirate," being true, constitute an offense.

7. *Same.*—It is only such a violation of duty as directly tends to prejudice the maintenance of public justice, or a reckless exercise of functions accompanied by an indifference to considerations of right and wrong, which present sufficient cause for removal. Mere reckless private speech and defamation of character, which have no connection with the discharge of his judicial functions and do not affect, in the least, the administration of his office, do not constitute sufficient ground.

Application for the removal of Thomas S. King from the office of police justice of the city of Buffalo.

*Adelbert Moot*, for petitioner.

*Daniel N. Lockwood* and *William B. Hoyt*, for respondent.

MACOMBER, J.—This is an application for the removal of the respondent from his office as police justice of the city of Buffalo, upon the ground that, as stated in the charge contained in the petition, he has been guilty of serious misconduct in office and flagrant neglect of duty.

Counsel for the respondent, by a supplemental brief filed since the oral argument was had, makes the point that this court has not jurisdiction in the premises.

By the charter of the city of Buffalo as it now exists (chapter 519 of the Laws of 1870, tit. 2, § 24, as amended by chapter 17 of the Laws of 1886), the power of removal of the police justice is given to the mayor of that city. The language of the section of the act conferring this power is as follows:

"He shall also have power to suspend or remove such officers, whether they be elected or appointed, for misconduct in office or neglect of duty, to be specified in the order of removal, but no such removal shall be made without reasonable notice to the officer complained of and an opportunity afforded him to be heard in his own behalf, etc." The officers therein referred to include the police justice of that city.

The existence, however, of such power, lodged in the hands of the mayor, does not deprive this court of like jurisdiction, provided it has been conferred by the constitution and the laws. By section 18 of article 6 of the constitution of the state of New York, "justices of the peace, judges and justices of inferior courts, not of record, and their clerks, may be removed, after due notice and an opportunity of being heard by such courts as may be prescribed, for cause, to be assigned in the order of removal."

In pursuance of this constitutional provision conferring the power of removal upon such courts as the legislature may designate, the Code of Criminal Procedure, section 132, enacts as follows: "Justices of the peace, police justices, justices of justices' courts and their clerks are removable by

the supreme court at a general term." We have, therefore, an article of the organic law conferring upon such courts as may be prescribed by law the power of removal, for cause, of officers of this description. The police court for the city of Buffalo is clearly an inferior court not of record named in the constitution.

If the power given to the mayor of the city of Buffalo to remove the police justice is constitutional, a question which we do not pass upon because it is not before us, the result is that the police magistrate of that city is amenable to two tribunals, the one judicial and the other executive, clothed with power, for proper cause, to remove him from office. This court, however, cannot be ousted of its jurisdiction by any power given by the legislature to the mayor, for the reason that our power is derived directly from the constitution, and is not dependent upon a statute alone, except in so far as the statute already quoted designates the particular court which shall exercise such power. We are constrained, therefore, to examine this case upon its merits.

Following the general course pursued in courts martial and courts of impeachment, the respondent is accused in one general charge, to which there are subjoined fourteen specifications of offenses; the last specification containing in itself six subdivisions. The charge is "that Thomas S. King, of said city, who now is, and all of the times hereinafter mentioned has been, police justice of said city, has, as such police justice, since his present term of office began, been guilty of serious misconduct in office, and flagrant neglect of duty, and most respectfully submits the following amended specifications of such charge, etc."

Upon filing the answer of the respondent, an order of reference was made, to take the testimony pertaining to this charge, and these specifications, with directions to the referee to report the same, with his opinion thereon, to this court. The learned referee was probably not authorized to make, and accordingly has not made, any recommendation

in his report or opinion touching the propriety of the removal of the respondent from office.

He has found, as a fact, that specifications 1, 2, 3, 4, 5, 6, 9, 10, 12, and items 4, 5 and 6, being subdivisions of specification 14, have not been proven. The petitioner's counsel raises no question in regard to this part of the referee's report; consequently, the accusations covered by those specifications enumerated above need not be considered.

Item No. 1 of specification 14 charges that on or about the 11th day of November, 1886, Mr. King ordered one Edward Cutter, a newspaper reporter, to be arrested and placed in the prisoner's box, charged with contempt of court, though said Cutter had not by word or deed been guilty of any contempt of court. We are unable to consider the evidence of this specification, for the reason that it was not properly admitted under the charges made against Mr. King.

The office of a specification is to make particular a general accusation contained in the charge proper. It cannot be extended over a period of time which the charge itself does not cover. In this class of proceedings the charge is designed to be general in its terms, but still the time within which the supposed offense had been committed is required to be stated. The charge in the indictment against Mr. King is that he has been guilty of misconduct in office "since his present term of office began." His present term of office began on the 1st day of January, 1887, and consequently his conduct, on the 11th day of November, 1886, towards Mr. Cutter, cannot be made the subject-matter of his removal under this charge. Conant v. Grogan, 6 N. Y. State Rep. 322.

So, also, of item No. 2 of specification 14, which relates to the treatment of Charles E. Stilwell, Esq., by the respondent.

Mr. King is here charged with wilfully, falsely and maliciously committing to the common jail of Erie county, this

gentleman, for what was alleged to be a contempt of court. This misconduct is alleged to have occurred on the 12th day of December, 1884, upwards of two years before the present term of Mr. King's office began. We are not permitted to consider this specification either, for the reasons above stated, namely, that it is not embraced in the general charge against Mr. King.

The other specifications, some of which the referee has found to be fully, and others partially proven, will be considered in their order.

## SPECIFICATION No. 7.

On September 26, 1887, one Sarah Spielberger made information in bastardy against John Teitlebaum, and the overseer of the poor made application for an inquiry, upon which a warrant was issued for the arrest of Teitlebaum, who was brought into court on the twenty-ninth day of September, three days afterward. Teitlebaum and Sarah Spielberger were foreigners, and did not speak English sufficiently well to be easily understood. The complainant was represented by a man, who though not an admitted attorney, practiced quite extensively in the police court of Buffalo. Teitlebaum had no counsel. It was impossible for the fact to be definitely ascertained, at the time of this examination, whether the complainant was actually pregnant or not; and her counsel, therefore, asked that the case be postponed to await developements, until such time as such facts could be accurately determined. At his request, the police justice adjourned the case until the 27th day of November, 1887. Teitlebaum was accordingly committed for further examination in default of $300 bail, in which he was held by the magistrate. At the time this adjournment was had, Teitlebaum neither consented nor objected to the postponement, nor did he object to the commitment, nor does it appear that he was advised of his

legal rights, or that he clearly understood what was being done. After lying in jail about a month, the services of Mr. E. A. Hayes were obtained, who made attempts, during a period of one week or so, to make a settlement of the case between the parties, but did not meet with success. During all this time the justice told Hayes that Teitlebaum could go out of jail at any time when he should produce $300 bail. Hayes tried to get such bail, but failed.

At the adjourned day, November 27, 1887, another attorney, Fritz Voges, asked, in behalf of Teitlebaum, that the justice should try him speedily. On that day the parties appeared, but Mr. Slayton, the counsel for the girl, objected to proceeding at that time, and the case was adjourned. Again the counsel asked either for the trial or discharge of Teitlebaum. Mr. Slayton, in behalf of the prosecution, appeared for the girl, who was not present, and objected to proceeding, charging that the accused himself had been instrumental in keeping the girl away from court. Mr. Voges then demanded of Justice King a trial of the accused, and the justice replied from the bench that he (Voges) "could not bulldoze him; that he would keep him (Teitlebaum) in jail until he got ready to bring him over." Subsequently Teitlebaum was properly discharged by the county judge of Erie county upon a writ of *habeas corpus*. This just and fair judicial action, on the part of the county judge, irritated the police justice to such an extent that he was guilty of violence in word and manner, as stated.

The police justice had not the power to adjourn the hearing of that case from September twenty-ninth to November twenty-seventh, upon the request of the complainant, nor of his own motion, and to commit the defendant in the meantime in default of bail. Code Crim. Pro., sections 838–860.

No pretense is made that there was an absent witness, or that all of the evidence was not then in court. No incon-

venience was alleged to the prosecutor or his attorney.  It was an arbitrary adjournment of two months, for the reason that the evidence which the complainant was obliged to give in order to make out the charge of bastardy, could not be forthcoming until an actual state of pregnancy could be shown by medical evidence.  At that time it was not known, and could not have been definitely ascertained, whether the defendant could, at any time, be properly restrained of his liberty by reason of his relations with this woman.  This referee has found that this action on the part of the police justice was influenced by partiality, passion and prejudice.

In considering the question whether this act and the finding of the referee would justify us in actually removing the magistrate from office, we ought to, as the referee has done, take into consideration the character and nature of the case, and the course of procedure generally existing in police tribunals.

The cases coming before this magistrate are mostly of a petty and vexatious character, arising among a low and abandoned class of society.  The disposition which is to be made of such persons when brought before him requires a wide discretion to be reposed in the magistrate.  In this particular instance, although the police justice acted, as has been found, from "passion and prejudice," yet such action was inspired largely by a not unnatural indignation which he, as a man, felt at the treatment which he believed the woman, Spielberger, had received at the hands of Teitlebaum.  She had been seduced by him; he had obtained what little money or property she possessed, and then he brutally turned her off.  After having ruined her in reputation and estate, he, with a refinement of cruelty, told her to go and lead the life of a public prostitute.

Under these circumstances, and upon the ground that no objection was made to an adjournment of the hearing for two months, we do not think this specification, though

shown to be true in substance, would justify us in removing the respondent from office.

## SPECIFICATION No. 8.

This specification is to the effect, that after the discharge of Teitlebaum mentioned above, the respondent was guilty of rash and intemperate language, not only against the county judge of Erie county, but against the mayor of the city of Buffalo, declaring that they should be impeached and removed from office. This language the referee has found was the result of spite and malice cherished by King toward the officials named. The charge against these public officers was unjust in the extreme and maliciously false. The words were uttered from the bench, but it was the bench only of a police justice, who after years of association in that capacity with the criminal classes, has acquired violent and extravagant modes of expression, for the manifest reason that that was the only language which his auditors clearly understood. . The words were clearly slanderous, and the speaker could not be relieved from the consequences thereof by reason of the fact that he was a magistrate. They were not uttered in the discharge of his official duties, and he was consequently amenable to the persons traduced to respond in a civil action, and to criminal indictment also.

We do not think that the words are sufficient to justify us in the removal of the officer ; nor do we think that such a conclusion was contemplated by the provision cited from the constitution of this state, by which, upon the removal of such officer, the reason shall be given therefor. If we should remove for this offense, the order would necessarily allege that the removal was made for slanderous words spoken by the police justice concerning public officers, and not for any official act.

## SPECIFICATION No. 11.

By this specification Mr. King is charged with suspend-

ing sentence on one Ward, convicted of assault and battery, after giving the prisoner a sound lecture. The referee is unable to say that the discharge of this man was not in the interest of the parties and of society. The only serious element in this specification is the contemptuous and disrespectful reference which the police justice made to worthy public officials.

## SPECIFICATION No. 13.

Prior to December 16, 1887, two policemen, by the name of Swan and Lyons, had been detailed for duty in the police court. On the last named date others were substituted for them by the board of police commissioners. Mr. King complained of this change, alleging that he was not consulted in the selection of the new officers and did not wish their services, stating to the police commissioners that they could assign them to different duty, which they might have for them elsewhere, but he did not wish their services and could get along with an interpreter or an occasional appeal to the public to maintain order; that if the board had any other duty for these men, the taxpayers might have saved some expense. About two months after this time the police magistrate rebuked one of the policemen so assigned to his court, for directing a bystander to take his hat off, and directed the officer to tell the commissioners that he (the magistrate) did not want him there.

This specification, though found to be proven, does not come up to the allegation made in the petition of " serious misconduct " on the part of the respondent in office.

## ITEM 3 OF SPECIFICATION 14.

A person by the name of Wepel, or Whipple, had been convicted, by the police magistrate, of petit larceny, and an appeal had been taken to the court of sessions of Erie

county from the judgment of conviction. In the return, which the respondent was required to make, he used the following irrelevant language:

" The undersigned further states that if he is not mistaken in the handwriting in the body of the annexed affidavit, the same was drawn up by a certain penitentiary outcast and legal pirate, who has made a practice of hanging around the police court and penitentiary, seeking whom he might devour, and persuading ignorant persons to pay him a paltry stipend to procure an appeal when he knows there is no cause for a reversal of the judgment of the court, often causing them to unwittingly commit perjury."

This language is charged in the specification to have been wilfully and maliciously uttered, with intent to injure and disgrace the attorney referred to. The evidence, however, discloses the fact that the attorney so criticised had, between the months of June, 1879, and April, 1887, been arrested thirty-one (31) times for intoxication, and once for false pretenses, and had been committed twenty-three (23) times out of such number to the Erie County Penitentiary, in default of payment of the fine imposed. While at the penitentiary he plied his vocation and induced persons to employ him to undertake their release from confinement, in some of which cases he was successful, and others of which he was not.

The referee has substantially found that the statement so incorporated in the return to the appellate court, was wilfully and maliciously done with intent to disgrace the attorney. But he is not able to find that the same was false.

Under the circumstances, his statement being true, and the attorney being a man of no character from his own showing, we do not think that the police magistrate committed any offense, except against good taste and judicial dignity. Such attorneys as the police justice has described are, unfortunately, too numerous around petty courts in our

large towns, and the rebuke herein contained is not alto-
gether untimely, though out of place.

This completes our examination of the charge, and of so
much of the several specifications which the referee has found
from the evidence to have been proven.   On the whole, not
deeming ourselves empowered to consider the cases of Still-
man and Cutter, we have concluded therefrom, that the re-
spondent is not guilty of any act which would require us
to remove him from office.   There' has been no charge of
corruption against the accused.   The accusations against
him of intoxication while upon the bench were not estab-
lished, and were not insisted upon at the argument.   While it
is impossible for us not to take into the account the fact
that the evidence before us relates to the official conduct of
a petty judicial officer, and not to that of a judge of a court
of record, yet even in this case an intentional violation of
duty by the police magistrate, though unaccompanied by
actual corruption, might be a sufficient reason for his im-
peachment and removal from office, provided such conduct
were of a character to demoralize or injure the administra-
tion of justice, and bring his court into public contempt.
But it is not every violation of duty which would justify re-
moval ; it is only such a violation as directly tends to prej-
udice the maintenance of public justice, which should lead
to that end.   Furthermore, even though the case did not
rise to an intentional malfeasance in office, yet, if there ap-
peared to be clearly established a reckless exercise of func-
tions by the respondent, accompanied by an indifference to
considerations of right and wrong, a sufficient cause would
be presented for his removal upon this ground also.

This proposition, however, should not be confounded
with mere reckless private speech and defamation of char-
acter, which have been indulged in by the respondent, and
which have no connection with the discharge of his judicial
functions, and are not shown to have affected, in the least,
the administration of his office.   The slanderous words

spoken while on the bench were inspired and uttered, not while engaged in the discharge of his judicial functions, but rather as a private citizen, for which he is amenable to the persons injured.   Being limited, as we are, to proof of his acts between the first day of January, 1887, and the time of the filing of this petition, we think no sufficient ground has been shown for the removal of the respondent.

The application should, therefore, be denied, and the petition dismissed.

All concur.